UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| NAIMA HAMMONDS, | ) |
| Plaintiff, | ) |
| v. | ) **COMPLAINT** |
| TRINITY PARTNERS, LLC, | ) Civil Action No.: 5:23-cv-347 |
| Defendant. | ) [Jury Trial Demanded] |

NOW COMES Plaintiff, NAIMA HAMMONDS, by and through undersigned counsel, and complains against Defendant TRINITY PARTNERS, LLC. as follows:

### INTRODUCTION AND NATURE OF THE CASE

Plaintiff brings this action against Defendant for disability discrimination and retaliation in violation of The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, The Civil Rights Act of 1991, and violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k) for unlawful discrimination and retaliation against Plaintiff based on her pregnancy. Further Plaintiff asserts that Defendant wrongfully discharged her in violation of North Carolina public policy. Plaintiff seeks all available remedies including but not limited to, compensatory, punitive, and/or liquidated damages pursuant to federal and state law, as well as available equitable relief pursuant to 42 U.S.C. § 2000e-5(f)-(k), and as otherwise authorized pursuant to law.

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), as the claims for relief asserted herein arise under federal law,

and under 28 U.S.C. § 1343(a)(4), as the claims herein seek relief under acts of Congress providing for the protection of civil rights.

2. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

3. This Court has personal jurisdiction over Defendant because they operate within the State of North Carolina and within this District.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions given rise to the claims occurred in this District.

## PARTIES

5. Plaintiff Naime Hammonds ("Ms. Hammonds") is a citizen and resident of Wake County, North Carolina. Ms. Hammonds, an African American pregnant female, was employed by Trinity Partners, LLC. from March 28, 2022, to June 15, 2022. At all times hereto, Plaintiff constituted an "employee" within the meaning of 42 U.S.C. § 12111 (4).

6. Defendant Trinity Partners, LLC. ("Trinity") is a domestic Limited Liability Company organized and existing under the laws of the State of North Carolina with its principal office located at 440 South Church Street, Suite 800, Charlotte, North Carolina 28202. Defendant also maintains its registered office in Mecklenburg County, North Carolina.

7. At all relevant times, Defendant was qualified as an "employer" within the meaning of 42 U.S.C. § 12111 5(a) and, at all times relevant hereto, employed Ms. Hammonds.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Ms. Hammonds requested reasonable disability accommodations from Defendant as detailed *infra*, which were denied.

2

Case 5:23-cv-00347-BO-BM     Document 1     Filed 06/26/23     Page 2 of 15

9. Ms. Hammonds timely executed and filed a Charge of Discrimination with the Raleigh Area Office of the Equal Employment Opportunity Commission ("EEOC") on September 30, 2022, alleging violations of her federal protected civil rights.

10. The EEOC issued a Notice of Right to Sue on March 2, 2023.

11. Ms. Hammonds complied with all deadlines relating to the investigation of her formal administrative complaint.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

13. Trinity hired Ms. Hammonds as an assistant property manager on March 28, 2022.

14. Defendant Trinity operates a commercial real estate services company providing property management services.

15. In her position as assistant property manager, Ms. Hammonds supported property managers with a portfolio of properties. Ms. Hammonds' job responsibilities included, but were not limited to, overseeing contracts; ensuring building codes and safety systems were updated and working; collecting rents due; assisting with preparation and execution of annual property business plans; responding to tenant requests; and monitoring and reviewing preventive maintenance programs.

16. Approximately one month after her hire date, Ms. Hammonds learned that she was pregnant.

17. Due to her pregnancy, Ms. Hammonds' physician began tapering her mental health medications. Ms. Hammonds' medications had been prescribed for her bipolar II disorder, generalized anxiety disorder, and major depressive disorder for which she had been diagnosed in 2019.

18. On or about April 28, 2022, Ms. Hammonds experienced a panic attack while at work.

19. Shortly thereafter, Ms. Hammonds saw her medical provider for her panic attack and learned it was likely the result of the change in her medications. As a result, Ms. Hammonds' doctor wrote a letter requesting that her employer allow for accommodations and adjustment of her job duties. Specifically, Ms. Hammonds' physician recommended that she work from home to help alleviate her symptoms.

20. On May 4, 2022, Ms. Hammonds provided the letter to the following Trinity representatives: Sandy Duck ("Duck"), Human Resource Manager; Pam Peine ("Peine"), Human Resource Representative; Toiya Vaughn ("Vaughn"), Human Resource Representative; and Amy Mayer ("Mayer"), one of the partners of Trinity.

21. A few days later, Ms. Hammonds met with Duck, Peine, and Vaughn to discuss her need for disability accommodations. During the meeting, Ms. Hammonds was informed that her request for disability accommodations was denied.

22. Ms. Hammonds was further informed that in order to be eligible for remote work, she must be employed by Trinity for a minimum of one year.

23. This information confused Ms. Hammonds since at the beginning of her employment Defendant represented to her that Defendant was "flexible" and allowed employees to work from home.

24. Defendant's handbook states that Trinity considers telecommuting to be a viable alternative work arrangement in cases where individual, job, and manager characteristics are best suited to such an arrangement.

25. On May 20, 2022, Trinity issued Ms. Hammonds a final written warning that referenced alleged poor job performance.

26. Ms. Hammonds sent an email to Duck and Mayer on May 22, 2022. In the email she expressed her concerns about receiving the final warning because it was her first and only warning, which was contrary to Defendant's employee handbook, and it occurred after she requested disability accommodations.

27. Defendant's employee handbook states that before a final written warning is issued, the employee first receives verbal warning and counseling, as well as one written warning. Ms. Hammonds had not received either of these.

28. Ms. Hammonds also indicated to Defendant that she believed the final warning was the result of discrimination because it was issued after sharing information about her disability and her need for accommodations.

29. Mayer told Ms. Hammonds that Defendant Trinity was not required to follow any sequence regarding the corrective action process and could take any action that it considered appropriate.

30. On June 6, 2022, Ms. Hammonds expressed her concerns about the inconsistencies of being told that she is now unable to work from home when Ms. Hammonds was told by Mayer that the position could be arranged to be a work from home position.

31. Mayer informed Ms. Hammonds that the role is not a work from home position and that the times that Ms. Hammonds was able to work from home were exceptions and not the norm.

32. Because she had heard nothing further, in early June of 2022, Ms. Hammonds again asked about disability accommodations. Trinity again flatly denied Ms. Hammonds' request.

33. At this point, Ms. Hammonds believed Defendant was discriminating against her based on her disability. On June 9, 2022, Ms. Hammonds filed an inquiry with the EEOC.

34. Six days later, on June 15, 2022, David Townsend ("Townsend"), one of the partners of Trinity, and Mayer requested a meeting with Ms. Hammonds, in which they summarily fired her.

## FIRST CLAIM FOR RELIEF
### Discrimination In Violation Of The Americans With Disabilities Act, As Amended (ADA), 42 U.S.C. § 12101 *et seq*.

35. Plaintiff reiterates and realleges each and every paragraph above and incorporates each hereto as if fully set forth herein.

36. Ms. Ince constitutes a qualified individual with a disability pursuant to the ADA because she suffers from physical or mental impairment which substantially limits one or more major life activities and has a record of such an impairment. Specifically, Ms. Ince suffers from, and has medically treated for generalized anxiety disorder, major depressive discovery and bipolar disorder for years.

37. Ms. Hammonds is a qualified individual pursuant to the ADA because she performed the essential functions of her job without accommodations from her date of hire in March 2022 until the time that her doctor began tapering her medications due to her pregnancy.

38. Ms. Hammonds is also a qualified individual pursuant to the ADA because Ms. Hammonds can perform her job with reasonable accommodations. Ms. Hammonds sought accommodations on May 4, 2022, with the intention that working from home a few days a week would prevent her from experiencing panic attacks induced by constant social interactions that she was forced to endure while working in person.

39. Defendant and its employees were aware of Ms. Hammonds' disabilities. On May 4, 2022, Ms. Hammonds provided Trinity's Human Resources department and her direct supervisor, Mayer, with a statement from her doctor stating her disability and a need for accommodations.

40. Defendant intentionally discriminated against Ms. Hammonds, a qualified individual with disabilities, by treating her less favorably than her non-disabled coworkers regarding job training, work conditions, and privileges of her employment with Trinity in violation of the Act.

41. Specifically, Defendant Trinity permitted employees Blonnie Massenburg and Krystal Garcia to work from home intermittently though neither employee had been at Trinity for a full year.

42. Defendant Trinity consistently denied Ms. Hammonds' requests for accommodations without a legitimate reason.

43. As described hereinabove, Ms. Hammonds was treated less favorably than her non-disabled coworkers. Ms. Hammonds requested reasonable accommodations to work from home for a few days each week. Defendant had a company policy permitting employees to work from home and even considered telecommuting to be a viable alternative work arrangement. The adverse employment actions taken against Ms. Hammonds were based almost solely on her disabilities.

44. By failing to provide an accommodation to Ms. Hammonds due to her disability, Defendant acted intentionally, maliciously, and with reckless indifference to her federally protected right to be free from discrimination and disparate treatment based on her disability.

45. Defendant's conduct, by and through its supervisors and managers, deprived Ms. Hammonds of equal employment because of her disability.

46. As a direct, foreseeable, and proximate result of Defendant's violation of the Act as described herein, Ms. Hammonds has suffered and continues to suffer emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

47. As a further direct, foreseeable, and proximate result of Defendant's violation of the Act as described herein, Ms. Hammonds has suffered and continues to suffer pecuniary losses in the form of, *inter alia*, lost income, interest, and benefits.

**SECOND CLAIM FOR RELIEF**
**Discrimination in Violation of Title VII, The Pregnancy**
**Discrimination Act, 42 U.S.C. § 2000e(k) *et seq.***

48. Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

49. Defendant hired Ms. Hammonds in March 2022. She worked for Defendant the months of March and April of 2022, with Defendant and no one informed her of any performance issues.

50. At all times relevant hereto, Ms. Hammonds, a pregnant female in the workplace, was a member of a protected class as set forth in Title VII, as amended by the PDA. Defendant knew that Ms. Hammonds was pregnant because she informed her direct supervisor, Mayer, as well as Defendant's Human Resource Department of her pregnancy on or about May 4, 2022.

51. Around the same time, Ms. Hammonds informed Mayer and Defendant's Human Resource department about the physician-directed tapering of her medications due to her pregnancy. She also provided them with the letter from her physician, which advised that she needed accommodations, such as being able to work from home.

52. Defendant denied Ms. Hammonds' requests for accommodation to work from home, and Defendant did not engage in the interactive process with Ms. Hammonds, and thus, did not offer any accommodations to her at all. Defendant also did not tell Ms. Hammonds that providing her accommodations would constitute an undue hardship. When Defendant informed Ms. Hammonds that she was not able to work from home, she was told that in order to be eligible to work from home, she must be employed by Defendant for a year.

53. This confused Ms. Hammonds because Defendant told her when she was hired that the position was "flexible" and that employees were allowed to work from home periodically.

54. During the relevant time period, other similarly situated females outside the protected class, including but not limited to, Blonnie Massenburg and Krystal Garcia, were allowed to work from home even though they had not been employed with the Defendant for a year, and, upon information and belief, neither was pregnant.

55. Defendant issued Ms. Hammonds a "final written warning" on or about May 20, 2022, citing concerns with Ms. Hammonds' job performance. Although Defendant's corrective policy was to issue verbal and written warnings prior to a final written warning. Defendant did not follow said policy with respect to Ms. Hammonds because she was never given verbal or written warnings prior to receiving Defendant's final written warning.

56. Ms. Hammonds met with her supervisor and representatives of Defendant's Human Resources Department to discuss the final warning she had received. In the meeting, she told them she believed the corrective action was the result of discrimination.

57. On or about June 9, 2022, Ms. Hammonds filed a charge with the EEOC alleging Defendant had discriminated against her.

58. On June 15, 2022, Defendant fired Ms. Hammonds – four (4) business days after she filed her EEOC charge, and approximately three (3) weeks after she informed Defendant that she believed she was being discriminated against. At the time of firing, Defendant provided no reason for her termination.

59. As a direct, proximate, and foreseeable result of Defendant's actions that violate Title VII and the Pregnancy Discrimination Act, Ms. Hammonds has suffered damages, including but not limited to, emotional distress, pain and suffering, mental anguish, and other non-pecuniary damages in an amount to be proven at the trial of this matter.

60. As a direct, proximate, and foreseeable result of Defendant's actions that violate Title VII and the Pregnancy Discrimination Act, Ms. Hammonds has suffered damages, including but not limited to, back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs in an amount to be proven at the trial of this matter.

### THIRD CLAIM FOR RELIEF
### Retaliation In Violation Of The Americans With Disabilities Act, As Amended (ADA), 42 U.S.C. § 12101 *et seq*. and Title VII, The Pregnancy Discrimination Act

61. Plaintiff reiterates and realleged each and every paragraph above as if set forth fully herein.

62. On May 4, 2022, Ms. Hammonds engaged in a protected activity when she informed Defendant that she was pregnant and requested accommodations due to her disabilities and pregnancy.

63. On May 20, 2022, Defendant took an adverse employment action against Ms. Hammonds when it issued Ms. Hammonds a "final written warning" concerning her performance even though she had not received any previous warnings, no one had mentioned performance

issues to her, and issuance of the final written warning contradicted Defendant's policies as stated in its employee handbook.

64. Two days later, on May 22, 2022, Ms. Hammonds engaged in a protected activity when she informed Defendant that she believed the written warning was the result of discriminatory animus.

65. In early June 2022, Ms. Hammonds engaged in a protected activity when she again requested disability accommodations, which she was refused.

66. On June 9, 2022, Ms. Hammonds engaged in a protected activity when she filed an EEOC charge alleging discrimination based on her pregnancy and her disabilities.

67. Defendant terminated Ms. Hammonds on June 15, 2022, and provided no reason for her termination.

68. A causal link exists between Defendant's termination of Ms. Hammonds and the aforementioned protected activities because, including but not limited to:

    i. Two weeks after Ms. Ince informed Defendant that she was pregnant and requested accommodations due to her disabilities and pregnancy, Defendant issued a final written warning to Ms. Hammonds; and

    ii. Prior to engaging in the protected activities, Defendant had not mentioned any performance issues to Ms. Hammonds; and

    iii. Defendant fired Ms. Hammonds approximately three weeks after Ms. Hammonds asserted that the written warning was the result of discriminatory animus and four business days after she filed her EEOC charge of discrimination; and

    iv. Any other facts that may be revealed through discovery and/or proven at the trial of this matter.

69. As a direct, proximate, and foreseeable result of Defendant's violations of the Acts as described herein, Ms. Hammonds has suffered and continues to suffer emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

70. As a further direct, proximate, and foreseeable result of Defendant's violation of the Acts as described herein, Plaintiff has suffered and continues to suffer pecuniary losses in the form of, *inter alia*, lost income, interest and benefits.

**FOURTH CLAIM FOR RELIEF**
**Wrongful Discharge In Violation Of**
**North Carolina Public Policy**

71. Plaintiff reiterates and realleges each and every paragraph above and incorporates each hereto as if fully set forth herein.

72. Defendant Trinity unlawfully discriminated and retaliated against Ms. Ince for engaging in the protected activities related to her pregnancy and her disabilities as alleged above.

73. Defendant's acts, as described hereinabove, contravene, and violate the public policy of the State of North Carolina as set forth in North Carolina's Equal Employment Practices Act (NCEEPA). NCEEPA declares it is the policy of this State to "protect and safeguard the right and opportunity of all persons to seek, obtain and *hold employment* without discrimination or abridgement on account of … *sex or handicap*…" *See* N.C. Gen. Stat. § 143-422.2.

74. As set forth above in Paragraphs 13-36, *supra*, Defendant engaged in unlawful employment practices in violation of North Carolina law. Specifically, Defendant, through its partners and managers, discriminated against Ms. Hammonds by denying Ms. Hammonds reasonable accommodations, and terminating her for engaging in the protected activities alleged above.

75. Defendant's actions, as described hereinabove, violated the EEPA, among other statutes, and offended North Carolina's public policy of permitting employees to hold employment without discrimination and/or retaliation on account of their disabilities. Ms. Hammonds was

wrongfully terminated in violation of public policy because she opposed and complained about the repeated denial of her right to accommodations.

76. Ms. Ince's disabilities and her protected activities alleged above were the direct, proximate, and foreseeable result of Defendant's decision to terminate her employment.

77. Therefore, Ms. Hammonds is entitled to compensation for lost wages, lost benefits, front pay, back pay, economic losses, compensatory damages, costs, expenses, attorneys' fees, and any other applicable damages pursuant to North Carolina law.

## **FIFTH CLAIM FOR RELIEF**
## **PUNITIVE DAMAGES**

78. Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

79. Defendant's acts as alleged hereinabove were committed with either an evil motive and/or with reckless and wonton disregard for the rights of Ms. Hammonds to be free from discrimination and/or retaliation based on her engaging in protected activities.

80. On May 22, 2022, Defendant issued Ms. Hammonds a final written warning concerning her performance even though she had never previously received any warnings in direct contradiction of Defendant's policy as set forth in its employee handbook.

81. Defendant refused to engage in an interactive process to provide disability accommodations for Ms. Hammonds. Additionally, Defendant did not propose any alternatives to the proposed accommodations provided by Ms. Hammonds.

82. As described hereinabove, Defendant, through the acts of partners and managers, acted willfully, consciously, and intentionally disregarded and/or showed reckless indifference to Ms. Hammonds' constitutional rights to be free from discrimination and retaliation based on her pregnancy and disabilities. Defendant, through the acts of its partners and managers, consciously

13

Case 5:23-cv-00347-BO-BM     Document 1     Filed 06/26/23     Page 13 of 15

and maliciously disciplined Ms. Hammonds in a discriminatory and retaliatory manner in order to terminate her by way of a final written warning without prior warnings being given.

83. As a direct, proximate, and foreseeable result of Defendant's intentional, reckless and/or willful and wanton conduct, Ms. Hammonds has suffered and continues to suffer damages, including emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other nonpecuniary damages.

84. Based on the foregoing and, pursuant to N.C. Gen. Stat. § 1D-15, Ms. Hammonds is entitled to recover punitive damages from Defendant.

## **JURY DEMAND**

Plaintiff demands a trial by jury of the claims asserted in this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays the Court for judgment against Defendant to the full extent permitted by federal and/or state law, including but not limited to, Title VII, the Pregnancy Discrimination Act, and the Americans with Disabilities Act, as amended, including not limited to, the following:

1. Judgment in Plaintiff's favor, determining that Defendant's discriminatory and/or retaliatory acts towards and relating to Plaintiff violated the Americans with Disabilities Act, Title VII, the Pregnancy Discrimination Act, and North Carolina public policy.

2. Award Plaintiff monetary damages back pay, front pay, interest, and monetized benefits;

3. Award Plaintiff monetary damages for compensatory damages, mental anguish, emotional distress, and other non-pecuniary damages;

4. Award Plaintiff punitive damages for Defendant's willful and wanton conduct as alleged herein;

5. Award Plaintiff all expenses, costs, disbursements, attorneys' fees, and expert witness fees incurred by Plaintiff in filing and prosecuting this action as may be authorized by federal and/or state law;

6. Award of pre- and post- judgment interest to Plaintiff on all damages proven; and

7. For all other, further relief as this Court deems just and appropriate.

This the 26th day of June, 2023.

**GREEN MISTRETTA LAW, PLLC**

/s/ Dawn T. Mistretta
Dawn T. Mistretta, N.C. State Bar No. 31691
Aliyah S. Adams, N.C. State Bar No. 58756
1752 Heritage Center Drive, Suite 101
Wake Forest, North Carolina 27587
Telephone: (919) 278-7453
Facsimile: (855) 876-8893
dmistretta@gmlawyers.org
aadams@gmlawyers.org
*Counsel for Plaintiff*